IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| LUIS MEDEL-GUADALUPE, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:22-cv-38 |
| | § | CRIM. ACTION NO. 1:19-428-1 |
| UNITED STATES OF AMERICA, | § | |
| Respondent. | § | |

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

On March 31, 2022, Petitioner Luis Medel-Guadalupe filed a motion to vacate, set aside or correct his sentence pursuant to 42 U.S.C. § 2255. Dkt. No. 1. Medel-Guadalupe alleges that his lawyer was ineffective for advising him to plead guilty to a duplicitous indictment. Id.

The Court has an independent obligation to review the record and the pleadings; "if it plainly appears" that the petitioner is not entitled to relief, the Court "must dismiss" the petition without ordering the Government to respond. Rule 4(b) of the Rules Governing Section 2255 Proceedings.

After conducting that review, the Court recommends that the petition be denied. Medel-Guadalupe's petition is substantively meritless.

**I. Background**

    **A. Factual Background**

        **1. Indictment & Guilty Plea**

On April 30, 2019, the grand jury indicted Medel-Guadalupe on one count of conspiracy to harbor illegal aliens and four counts of harboring an illegal alien[1], in violation of 8 U.S.C. §§ 1324(a)(1)(A)(iii); 1324(a)(1)(A)(v)(i); 1324(a)(1)(A)(v)(ii); & 1324(a)(1)(B)(1). U.S. v. Medel-Guadalupe, Criminal No. 1:19-428-1, Dkt. No. 12 (J. Rodriguez presiding) [hereinafter CR].

---

[1] Each of the four counts referred to a different illegal alien that Medel-Guadalupe allegedly harbored.

On May 17, 2019, pursuant to a written plea agreement, Medel-Guadalupe pled guilty to a single count of harboring an illegal alien. CR Dkt. No. 22. As discussed further below, Medel-Guadalupe later withdrew from the plea agreement, but was not allowed to withdraw his guilty plea.

At his re-arraignment, Medel-Guadalupe stated that he understood that the maximum penalty he faced was 10 years of imprisonment. CR Dkt. No. 66, pp. 19-20. As part of the factual basis for his plea, Medel-Guadalupe admitted that he knowingly transported at least 26 individuals to a stash house in Brownsville, Texas, in exchange for financial gain. Id., pp. 37-40.

### 2. Presentence Report

In the final presentence report ("PSR"), Medel-Guadalupe was assessed a base offense level of 12. CR Dkt. No. 35, p. 10. He was also assessed a six-level enhancement based on relevant conduct, because he was accountable for harboring at least 50 undocumented immigrants. Id., pp. 9-10. Medel-Guadalupe was assessed a two-level enhancement because he has a previous conviction for conspiracy to harbor illegal aliens. Id. Furthermore, he was assessed a six-level enhancement for the use of a firearm during the commission of the offense. Id., p. 11.

Medel-Guadalupe was also assessed a two-level enhancement for recklessly creating a substantial risk of injury based on the conditions in his stash house and another two-level enhancement because one of the undocumented aliens suffered physical injury at the hands of Medel-Guadalupe's girlfriend. CR Dkt. No. 35, p. 11. He was assessed another two-level enhancement because he was a manager or leader of the stash house. Id., p. 11. Medel-Guadalupe was also assessed an additional two level enhancement for obstruction of justice, for threatening material witnesses who were scheduled to testify against him. Id., pp. 11-12. Because of his obstruction, he was not given any reduction for acceptance of responsibility. Id. Thus, Medel-Guadalupe was assessed a total offense level of 34. Id.

Regarding his criminal history, Medel-Guadalupe had five juvenile and two adult criminal convictions and was assessed 6 criminal history points. CR Dkt. No. 25, pp. 11-

19. He was also assessed an additional two criminal history points because he was on federal supervised released when he committed the instant offense. Id.  Thus, he was assessed 8 total criminal history points, resulting in a criminal history category of IV.

A total offense level of 34 and a criminal history category of IV resulted in a guideline sentencing range of 210 to 262 months.  However, the statutory maximum sentence for his offense was 120 months, which became his guideline sentence. CR Dkt. No. 35, p. 25.

Medel-Guadalupe timely objected to the PSR. CR Dkt. No. 38.  Medel-Guadalupe objected to the two-level enhancement for the injury suffered by the alien on the basis that the harm was committed by another person and was not done at his behest. Id.  He also objected to the enhancement based on the conditions in the home, noting that it had running water, electricity, bathroom facilities and food was given to the aliens. Id.  Medel-Guadalupe also objected to the enhancement for the use of the firearm. Id.  He also objected to the lack of a reduction for acceptance of responsibility. Id. [2]

### 3. Sentencing

On October 8, 2019, the Court held the sentencing hearing. CR Dkt. No. 71.  The Court overruled the objection as to the harm suffered by the alien. Id., pp. 8-9.  The Court also overruled the objection as to the conditions of the home. Id., p. 18.  Furthermore, the Court overruled the objection seeking the reduction for acceptance of responsibility. Id., pp. 25-26.  The Government did not contest the objection for the use of the firearm, which was sustained by the Court and not considered at the time of sentencing. Id., p. 19.

With a revised base offense level of 28 and a criminal history category of IV, Medel-Guadalupe's guideline sentencing range was 110 to 137 months.

At that point, Medel-Guadalupe moved to be released from the plea agreement, while maintaining his plea of guilty. CR Dkt. No. 71, pp. 30-31.  The Court granted the motion. Id., p. 32.

---

[2] In between pleading guilty and sentencing, Medel-Guadalupe sought to withdraw his guilty plea. CR Dkt. No. 39.  As noted earlier, the Court allowed Medel-Guadalupe to withdraw his plea agreement, but denied the request to withdraw the guilty plea.

The Court sentenced Medel-Guadalupe to the statutory maximum of 120 months imprisonment, and three years of supervised release. CR Dkt. No. 71, pp. 37-38. The Court also revoked Medel-Guadalupe's supervised release from his prior conviction, sentencing him to 12 months of imprisonment, to be served consecutively to his sentence in the instant case. Id., pp. 43-44. On October 16, 2019, the Court issued the judgment of conviction. CR Dkt. No. 44.

### 4. Direct Appeal

On October 24, 2019, Medel-Guadalupe timely filed a notice of appeal. CR Dkt. No. 49.

Via appointed counsel, Medel-Guadalupe raised five issues on appeal: (1) his indictment was duplicitous because Count Two – the one he pled guilty to – contained two distinct offenses; (2) the reckless endangerment enhancement, based on the conditions of the home, was not supported by the evidence; (3) the bodily injury enhancement based on his girlfriend's actions was not supported by the evidence; (4) the district court impermissibly delegated judicial authority to the probation officer in determining special conditions of supervised release; and (5) the district court failed to state its reasons for ordering the revocation sentence to be consecutive to the sentence in this case. CR Dkt. No. 77.

On February 8, 2021, the Fifth Circuit affirmed Medel-Guadalupe's sentence, rejecting all of his arguments. CR Dkt. No. 77. As relevant here, the Fifth Circuit found that by pleading guilty, Medel-Guadalupe waived any argument as to any defects in the indictment. Id. It also noted that even if Medel-Guadalupe's claim was examined on its merits, it would still fail "because he cannot demonstrate his substantial rights were affected." U.S. v. Medel-Guadalupe, 987 F.3d 424, 428 n. 3 (5th Cir. 2021). The appellate court stated that:

> The allegations in Count Two, and factual basis supporting the guilty plea, charge Medel-Guadalupe solely as a principal, which carries the 120-month maximum to which he was sentenced. Medel-Guadalupe agreed to the factual basis of the plea and was consistently advised that he faced a ten-year maximum sentence. Finally, Medel-Guadalupe makes no argument as to

> why the court should exercise its discretion to correct this error and we decline to do so when the record indicates that he was fully aware of the maximum sentence he was facing and that he pled guilty to his actions as principal, not an aider and abettor.

Medel-Guadalupe, 987 at 428 n. 3.

On April 19, 2021, the Supreme Court denied his petition for writ of certiorari. CR Dkt. No. 78. Thus, Medel-Guadalupe's conviction became final on that date. Clay v. U.S., 537 U.S. 522 (2003).

### B. Motion to Vacate, Set Aside or Correct Sentence Pursuant to § 2255

On March 31, 2022, Medel-Guadalupe timely filed the instant § 2255 motion, requesting that the District Court vacate, set aside, or correct his sentence. Dkt. No. 1.

Medel-Guadalupe makes one overarching claim: that his lawyer was ineffective for advising him to plead guilty to a duplicitous indictment. Dkt. No. 1.

Because this petition can be resolved solely on the record, the Court has not ordered the Government to respond.

## II. Applicable Law

### A. Section 2255

Medel-Guadalupe seeks relief pursuant to 28 U.S.C. § 2255. Dkt. No. 1. As relevant here, that section provides:

> (a) A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

Where a § 2255 petitioner exhausts or waives his direct appeal, courts may presume that he was fairly convicted. U.S. v. Willis, 273 F.3d 592, 595 (5th Cir. 2001). Generally, a petitioner may not raise on collateral attack issues that he failed to raise on direct appeal, absent a showing of cause and prejudice. Id.

"In a habeas action, federal courts stand willing to review issues of jurisdiction, allegations of substantial constitutional violations, and claims that exceptional circumstances resulted in a fundamental miscarriage of justice." Lawrence v. McCarthy, 344 F.3d 467, 474 (5th Cir. 2003).

### B. Ineffective Assistance of Counsel

An ineffective assistance of counsel claim brought under § 2255 is subject to the two-prong analysis articulated in Strickland v. Washington, 466 U.S. 668 (1984). U.S. v. Grammas, 376 F.3d 433, 436 (5th Cir. 2004). To establish ineffective assistance, the petitioner must show: (1) that defense counsel's performance was deficient; and (2) that the deficient performance prejudiced the defendant. Grammas, 376 F.3d at 436.

To prove that counsel's performance was deficient, petitioner must show that "it fell below an objective standard of reasonableness." U.S. v. Juarez, 672 F.3d 381, 385 (5th Cir. 2012). Courts will not "audit decisions that are within the bounds of professional prudence." U.S. v. Molina-Uribe, 429 F.3d 514, 518 (5th Cir. 2005).

## III. Analysis

A court may entertain and decide a § 2255 motion without requiring the production of the prisoner at a hearing. 28 U.S.C. § 2255. Further, where the information available in the record and the clarity of the facts demonstrate a clear absence of entitlement to relief, a hearing is not required. U.S. v. Bartholomew, 974 F.2d 39, 41 (5th Cir. 1992) ("A motion brought under § 2255 can be denied without a hearing only if the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief."). The record in this case satisfies this requirement, for which reason the motion can be decided without a hearing.

In analyzing Medel-Guadalupe's claims, a basic premise is that allegations by pro se litigants must be given liberal construction to ensure that their claims are not unfairly dismissed because of their unfamiliarity with the law. Haines v. Kerner, 404 U.S. 519, 520 (1972). Even applying that standard, neither the record – nor the law – support Medel-Guadalupe's claim.

### A. Ineffective Assistance

Medel-Guadalupe argues that his lawyer was ineffective for advising him to plead guilty to a duplicitous indictment. This claim is meritless.

Under 8 U.S.C. § 1324, aiding and abetting the harboring of an illegal alien is a separate and free standing offense, and distinct from the offense of harboring an illegal alien. U.S. v. Nolasco-Rosas, 286 F.3d 762, 767 (5th Cir. 2002) (per curiam). Count two of the indictment charged Medel-Guadalupe with violating § 1324(a)(1)(A)(iii), which prohibits harboring aliens, as well as § 1324(a)(1)(A)(v)(ii), which prohibits aiding and abetting the harboring of aliens. CR Dkt. No. 12, p. 2. Because Medel-Guadalupe admitted to harboring aliens for financial gain, he faced a maximum sentence of 10 years on the harboring count. § 1324(B)(i). The maximum sentence for aiding and abetting is five years. § 1324(B)(ii).

The indictment in this case was clearly duplicitous; but it was not prejudicial. An indictment is duplicitous if it charges multiple distinct offenses within a single count. U.S. v. Correa-Ventura, 6 F.3d 1070, 1081 n.18 (5th Cir. 1993). "The ban against duplicitous indictments derives from four concerns: prejudicial evidentiary rulings at trial; the lack of adequate notice of the nature of the charges against the defendant; prejudice in obtaining appellate review and prevention of double jeopardy; and risk of a jury's nonunanimous verdict." U.S. v. Cooper, 966 F.2d 936, 939 (5th Cir. 1992). "A duplicitous indictment is only cause for reversal if the defendant was prejudiced by the duplicity." U.S. v. Sanjar, 853 F.3d 190, 202 (5th Cir. 2017). The proper remedy for a duplicitous indictment "is to require the government to elect upon which charge contained in the count it will rely." U.S. v. McDermot, 58 F.3d 636 n. 6 (5th Cir. 1995).

As to the reasons that duplicitous indictments are not allowed, Medel-Guadalupe cites only the second reason, that he lacked notice of the nature of the charges against him. He argues that he "unknowingly and unintelligently [pled] guilty," as a result of the duplicitous indictment. Dkt. No. 1, p. 4. This argument, however, has been foreclosed, in this case.

The Fifth Circuit found on direct appeal that the indictment and the factual basis of the guilty plea make clear that Medel-Guadalupe was charged "solely as a principal" and not as an aider or abettor. Medel-Guadalupe, 987 F.3d at 428, n. 3.  The Fifth Circuit opinion also states that "the record indicates that [Medel-Guadalupe] was fully aware of the maximum sentence he was facing and that he pled guilty to his actions as principal, not an aider and abettor." Id.

This decision on "direct appeal constitutes law of the case for purposes of [the] § 2255 action." U.S. v. Goudeau, 512 F. App'x 390, 393 (5th Cir. 2013).  "The law of the case doctrine prohibits courts from relitigating matters that have previously been decided." U.S. v. Bowerman, 131 F. App'x 992, 993 (5th Cir. 2005).  Thus, this Court is bound by the Fifth Circuit's decision that Medel-Guadalupe was not prejudiced by any duplicitous indictment. U.S. v. Matthews, 312 F.3d 652, 657 (5th Cir. 2002).

As such, the Fifth Circuit has already held that Medel-Guadalupe was given full notice and awareness of the charges against him.  He was not prejudiced by the duplicitous indictment.  Thus, even if his lawyer was ineffective for not challenging the duplicitous indictment, he was not prejudiced by that failure.  Accordingly, any claim of ineffective assistance of counsel must also fail. U.S. v. Bejarano, 751 F.3d 280, 286 (5th Cir. 2014).  This claim should be denied.

**IV. Recommendation**

It is recommended that the Petitioner Luis Medel-Guadalupe's Motion to Vacate, Set Aside or Correct his Sentence pursuant to 28 U.S.C. § 2255, Dkt. No. 1, be denied as meritless.

### A. Certificate of Appealability

Unless a circuit justice or judge issues a Certificate of Appealability ("COA"), a petitioner may not appeal the denial of a § 2255 motion to the Fifth Circuit. 28 U.S.C. § 2253(a),(c)(1).  A petitioner may receive a COA only if he makes a "substantial showing of the denial of a constitutional right." § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).  To satisfy this standard, a petitioner must demonstrate that jurists of reason could disagree with the court's resolution of his constitutional claims or that jurists could

conclude that the issues presented are adequate to deserve encouragement to proceed further. Id. at 327; Moreno v. Dretke, 450 F.3d 158, 163 (5th Cir. 2006).  A district court may sua sponte rule on a COA, because the court that denies relief to a petitioner is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before the court. Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000).

After reviewing Medel-Guadalupe's § 2255 motion and the applicable Fifth Circuit precedent, the Court is confident that no outstanding issue would be debatable among jurists of reason.  Although Medel-Guadalupe's § 2255 motion raises issues that the Court has carefully considered, he fails to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  Accordingly, it is recommended that a COA should be denied.

### B. Notice to Parties

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation in which to file written objections, if any, with the United States District Judge. 28 U.S.C. § 636(b)(1).  A party filing objections must specifically identify the factual or legal findings to which objections are being made. The District Judge is not required to consider frivolous, conclusive, or general objections. Battle v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).

If any party fails to timely object to any factual or legal findings in this Report and Recommendation, the District Judge is not required to conduct a de novo review of the record before adopting these findings. If the District Judge chooses to adopt such findings without conducting a de novo review of the record, the parties may not attack those findings on appeal, except on the grounds of plain error. Alexander v. Verizon Wireless Servs., L.L.C., 875 F.3d 243, 248 (5th Cir. 2017).

DONE at Brownsville, Texas on April 5, 2022.

_____
Ronald G. Morgan
United States Magistrate Judge